

# IN THE
# TENTH COURT OF APPEALS

## No. 10-17-00126-CR

GAVIN DANIAR SNOW,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 21st District Court
Burleson County, Texas
Trial Court No. 14,898

## MEMORANDUM OPINION

The jury convicted Gavin Snow of the offense of capital murder and assessed his punishment at confinement for life. We affirm.

### Background Facts

Steven Bryant was found dead in his home from a gunshot wound. Law enforcement soon began to focus on Snow and two other individuals as being involved in the murder. Manuel Ramon and Snow were both indicted for capital murder. Ramon

agreed to testify in Snow's trial in exchange for pleading guilty to burglary of a habitation. Ramon testified that he previously bought marijuana from Bryant and that on the night of the murder, he and Snow, and Shanice Jefferson discussed stealing Bryant's drugs. Ramon testified that they drove by Bryant's residence, but he appeared to be at home. Ramon stated that he eventually went home and that Snow admitted to him the following day that he returned to Bryant's house for the drugs. Snow told Ramon that he had shot Bryant.

## Juvenile Transfer

In the first issue, Snow argues that the juvenile court erred in waiving its exclusive jurisdiction and transferring the cause to the district court. Pursuant to Section 54.02(a) of the Texas Family Code, in order to waive jurisdiction and transfer a child who is alleged to have committed a first-degree felony to the criminal district court, a juvenile court must find: (1) the child was 14 years old or older at the time of the alleged offense; (2) there is probable cause to believe the child committed the offense; and (3) because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings. TEX. FAM. CODE ANN. § 54.02 (a) (West 2014). In deciding whether the welfare of the community requires criminal proceedings, the juvenile court must consider four non-exclusive factors:

> (1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;
> (2) the sophistication and maturity of the child;

(3) the record and previous history of the child; and

(4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

TEX. FAM. CODE ANN. § 54.02 (f) (West 2014); *see Moon v. State*, 451 S.W.3d 28, 45 (Tex. Crim. App. 2014).

In evaluating a juvenile court's decision to waive its jurisdiction, an appellate court should first review the juvenile court's specific findings of fact regarding the Texas Family Code Section 54.02(f) factors under "traditional sufficiency of the evidence review." *Moon v. State*, 451 S.W.3d at 47. Not every Section 54.02(f) factor must weigh in favor of transfer to justify the juvenile court's discretionary decision to waive its jurisdiction. *Id*. The reviewing court should then review the juvenile court's ultimate waiver decision under an abuse of discretion standard. *Id*.

When reviewing the legal sufficiency of the evidence, we credit the proof favorable to the findings and disregard contrary proof unless a reasonable factfinder could not reject it. *Moon v. State*, 410 S.W.3d 366, 371 (Tex. App.—Houston [1st Dist.] 2013), *aff'd*, 451 S.W.3d 28 (Tex. Crim. App. 2014). If there is more than a scintilla of evidence supporting a finding, then the proof is legally sufficient. *Id.* When reviewing the factual sufficiency of the evidence, we consider all of the proof presented to determine if the juvenile court's findings are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.* Our review of the sufficiency of the

evidence supporting waiver is limited to the facts the juvenile court expressly relied on in its transfer order. *Moon v. State*, 451 S.W.3d at 50.

The juvenile court found that there was probable cause to believe that Snow committed an offense against a person, capital murder. The order describes that Snow caused the death of Steven Bryant by shooting him while in the course of committing or attempting to commit the offense of robbery of Steven Bryant. The juvenile court found there was probable cause to believe Snow committed the offense based upon a full investigation of his circumstances and the circumstances of the offense. The juvenile court found that Snow was sophisticated and mature. The juvenile court stated in the order that it "considered the record and previous history of the child and the prospects of adequate protection of the public and the likelihood of rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court." The juvenile court found that the procedures, services, and facilities currently available to the juvenile court will not likely rehabilitate Snow. The juvenile court further stated in the order that it had considered the seriousness of the offense and the background of Snow and found that because of the seriousness of the offense, the welfare of the community requires that the criminal proceedings proceed in criminal court.

In contrast to these case-specific findings, the only reason specifically stated in the *Moon* juvenile court's order to justify the waiver of jurisdiction was that the offense alleged was a serious one, and the only fact specified in support of this reason was that

the offense alleged was committed against the person of another. *See Matthews v. State*, 513 S.W.3d 45, 58 (Tex. App.—Houston [14 Dist.] 2016, pet. ref'd). In this case, the transfer order specifically references Snow's previous history and the seriousness of the offense of capital murder rather than the just the statement that Snow committed a serious offense against a person as in *Moon*. *Id*.

During the certification hearing, Snow's juvenile probation officer, Pam Kothmann, stated that Snow is very mature and makes his own decisions. Snow was almost seventeen years-old at the time of the certification hearing, and he was already on juvenile probation for another offense. Kothmann stated that Snow failed to comply with most of the conditions of his probation and that he was suspended from school, tested positive for marijuana twice, did not attend counseling, refused to attend chemical dependency group meetings, and got into an altercation with his dad.

Kothmann stated that Snow's parents are afraid of him. The record shows that Snow's dad, Bruce Snow, is a juvenile correction officer at the Giddings State School, Texas Juvenile Justice Department. Bruce Snow testified at the hearing that both he and his son used marijuana. The record shows that Bruce Snow pulled a gun on his son during an argument. Gavin Snow's family carried pepper spray to protect themselves from Gavin.

Kothmann testified that the juvenile facilities are not able to meet Snow's needs and that rehabilitation would be a very lengthy process for him. Kothmann recommended that Snow be transferred to the adult court system.

In orally announcing its findings, the juvenile court stated that in its personal experience in dealing with Snow, he is mature and understands the proceedings against him and is able to assist in his defense. The juvenile court had no doubt that Snow was sophisticated and mature as required to be considered by Section 54.02 (f). The juvenile court further stated that it considered Snow's history and noted Snow's escalating severity of violent behavior toward his family and also the general public. The juvenile court further stated that Snow has not taken advantage of rehabilitation services and that there is a low likelihood of rehabilitation in the juvenile system. The record shows that the juvenile court considered the factors set out in Section 54.02 (f).

Based on a review of the entire record, we conclude the transfer order is factually and legally sufficient to uphold the juvenile court's finding that the case should be transferred to criminal court. *See Rodriguez v. State*, 478 S.W.3d 783, 789 (Tex. App. —San Antonio 2015, pet. ref'd). After a hearing, with extensive cross-examination by defense counsel, the juvenile court's order clearly substantiates that the 54.02(f) factors were considered in the juvenile court's determination. *Id*. Given the evidence in the record and the specific factual findings of the juvenile court, we cannot conclude that the juvenile

court's determination to move the proceedings to criminal court was arbitrary or unreasonable. *Id*. We overrule the first issue.

## Suppression of Statement

In the second issue, Snow complains that the trial court erred in admitting the statement he made to his juvenile probation officer. We review a trial court's ruling on a motion to suppress the statement of a juvenile in an adjudication proceeding under the same abuse of discretion standard as a motion to suppress the statement of an adult in a criminal proceeding. *See Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002); *In re M.A.C.*, 339 S.W.3d 781, 784 (Tex. App. —Eastland 2011, no pet.). When reviewing the trial court's ruling on a motion to suppress, we view the evidence in the light most favorable to the trial court's ruling. *State v. Iduarte*, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008); *In re M.A.C.*, 339 S.W.3d at 784. We uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. *State v. Iduarte*, 268 S.W.3d at 548; *In re M.A.C.*, 339 S.W.3d at 784. We give almost total deference to the trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); *In re M.A.C.*, 339 S.W.3d at 784. However, we review de novo a trial court's rulings on application-of-law-to-fact questions that do not turn on the credibility and demeanor of witnesses. *Johnson v. State*, 68 S.W.3d at 652-53; *In re M.A.C.*, 339 S.W.3d at 784.

On the night he was taken into custody, Snow indicated he wanted to talk to his juvenile probation officer, Pam Kothmann. She told Snow she could not talk to him at that time and that she would have to read him his warnings before speaking to him. Following his detention hearing, Snow again indicated that he wanted to talk to Kothmann. She testified at the hearing on the motion to suppress that she read Snow his rights, but she was not expecting him to tell her the whole story. Snow did, however, give Kothmann a full statement about the offense. Kothmann testified that she did not ask Snow any questions to get him to tell her about the offense. Kothmann stated that she did ask Snow some clarifying questions, but she did not ask any interrogation type questions.

Snow told Kothmann that Shanice Jefferson bought marijuana from Bryant at his home and that she scoped out Bryant's home for drugs. Snow, Jefferson, and Ramon then waited for Bryant to leave for work so that they could steal his drugs. Bryant did not leave for work so the three decided to go in and take the drugs. Snow stated that they entered the house and demanded the drugs from Bryant, but Bryant denied having any drugs. Snow was pointing a gun at Bryant while demanding the drugs. Snow told Kothmann that the bandana on his face slipped down and that he panicked because he knew Bryant could identify him. Snow then shot Bryant. Snow stated that he then left the house with Jefferson and Ramon.

Kothmann testified at the hearing that she only asked Snow clarifying questions such as the last names of Shanice and Manuel. Kothmann also asked what motivated Snow to do it when he was supposed to enter treatment the following week. Kothmann stated that she only asked three or four questions and that the rest of the time Snow was talking.

Section 51.095 of the Texas Family Code incorporates the warnings required by *Miranda*[1], with additional safeguards in place to protect juveniles. *See* TEX. FAM. CODE ANN. § 51.095 (West 2014). Section 51.095 does not preclude admission of a juvenile's statement if the statement does not stem from custodial interrogation. *See* TEX. FAM. CODE ANN. § 51.095 (b) (West 2014). Custodial interrogation is questioning that is initiated by law enforcement after a person has been taken into custody or otherwise deprived of his freedom in any significant way. *Matthews v. State*, 513 S.W.3d 45, 62 (Tex. App.—Houston [14 Dist.] 2016, pet. ref'd); *Delacerda v. State*, 425 S.W.3d 367, 386 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). A custodial interrogation occurs when a defendant is in custody and is exposed "to any words or actions on the part of the police ... that [the police] should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 300-01, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *Roquemore v. State*, 60 S.W.3d 862, 868 (Tex. Crim. App. 2001).

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The parties agree that Snow was in custody at the time he made the statement to Kothmann. Snow indicated that he wished to talk to Kothmann, and she read him the *Miranda* warnings. Snow's statements were not the result of any questions or conduct by Kothmann. *See Roquemore v. State*, 60 S.W.3d at 868. The record shows that Snow made the statement voluntarily and that it was not the result of custodial interrogation. The trial court did not abuse its discretion in denying the motion to suppress the statement. We overrule the second issue.

### Lesser Included Offense

In the third issue Snow argues that the trial court erred in failing to include an instruction on felony murder in the charge as a lesser included offense of capital murder. Courts apply a two-step analysis to determine whether an instruction on a lesser-included offense should be given to the jury. *State v. Meru*, 414 S.W.3d 159, 162 (Tex. Crim. App. 2013); *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012). The first step of the analysis is a question of law that does not depend on the evidence presented at trial. *State v. Meru*, 414 S.W.3d at 162. This step compares the elements of the offense as alleged in the indictment with the elements of the requested lesser offense. *Id*. An offense will be a lesser-included offense where "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." TEX. CODE CRIM. PROC. ANN. art. 37.09(1) (West 2006); *State v. Meru*, 414 S.W.3d at 162.

Felony murder is a lesser included offense of capital murder. *See Smith v. State*, 297 S.W.3d 260, 275 (Tex. Crim. App. 2009). We therefore must determine whether a rational jury could find that, if the Snow is guilty, he is guilty only of the lesser offense. This is a fact determination and is based on the evidence presented at trial. *State v. Meru*, 414 S.W.3d at 163. If there is evidence that raises a fact issue of whether the defendant is guilty only of the lesser offense, an instruction on the lesser-included offense is warranted, regardless of whether the evidence is weak, impeached, or contradicted. *State v. Meru*, 414 S.W.3d at 163; *Cavazos v. State*, 382 S.W.3d at 383.

A person commits felony murder if he commits or attempts to commit a felony (other than manslaughter), and in the course of and in furtherance of the felony commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(3) (West 2011). Under the statute, a culpable mental state is required for the underlying felony, but there is no culpable mental state for the murder itself. *See Lomax v. State*, 233 S.W.3d 302, 304 (Tex. Crim. App. 2007). The distinguishing element between felony murder and capital murder is the intent to kill. *Fuentes v. State*, 991 S.W.2d 267, 272 (Tex. Crim. App. 1999).

Snow argues that the jury could have found that he acted recklessly rather than intentionally in shooting Bryant. Snow contends that there is no direct evidence of his intent when he pulled the trigger. Both Kothmann and Ramon testified that Snow said he was pointing the gun at Bryant and the bandana covering his face slipped down. Snow

knew that Bryant could identify him so he shot Bryant. The evidence shows that Snow pulled out the gun and pointed it at Bryant and that he shot him at close range. The evidence would not support an inference that Snow did not intend to kill Bryant, and it would not allow a rational jury to find that if he was guilty, he was guilty only of felony murder. *See Shepherd v. State*, 489 S.W.3d 559, 577 (Tex. App. —Texarkana 2016, pet ref'd). We overrule the third issue.

## Conclusion

We affirm the trial court's judgment.


AL SCOGGINS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
(Chief Justice Gray concurring with a note)*
(Justice Davis joins Chief Justice Gray in the concurring note only as to the first issue concerning the juvenile court's waiver of jurisdiction.)
Affirmed
Opinion delivered and filed November 7, 2018
Do not publish
[CRPM]

*(I concur in the judgment of the Court to the extent that it affirms the trial court's judgment of conviction. However, I cannot join the Court's memorandum opinion. In particular I disagree with the manner in which the first and second issues are analyzed. In the first issue, the Court mashes together the analysis of the reasons given in the juvenile court's order waiving jurisdiction and the fact findings supporting that ground. The order suffers the same problem as did the order in the *Moon* case. *Moon v. State*, 451 S.W.3d 28, 41 (Tex. Crim. App. 2014). The order contains many fact findings that would support a waiver of juvenile jurisdiction for the reason that because of the "background

of the child the welfare of the community requires that criminal proceedings proceed in criminal court." *See* TEX. FAM. CODE ANN. § 54.02(a)(3). However, the juvenile court did not include that as one of the reasons for the waiver in its written order. The only reason for waiver of its juvenile court jurisdiction contained in the order was the seriousness of the offense, which is very similar to the order held insufficient in *Moon*. The difference here is that the findings contained in the written order in support of the reason that because of the seriousness of the offense the welfare of the community requires that criminal proceedings proceed in criminal court are sufficient. The offense is a charge of capital murder. The findings include a finding that there is probable cause to believe the juvenile committed the crime as alleged, which was to intentionally cause the victim's death by shooting the victim in the course of committing or attempting to commit a robbery of the victim. Section 54.02(a)(3) states that, after considering all of the evidence and the factors, the juvenile court must determine that "because of the seriousness of the offense alleged *or* the background of the child the welfare of the community requires criminal proceedings." TEX. FAM. CODE ANN. § 52.04(a)(3) (emphasis added). If the seriousness of the offense, alone, would never be sufficient to support a waiver of juvenile jurisdiction, the reasons would not be listed in the statute with an "or" as the conjunction, rather than "and." Certainly, capital murder is the most serious offense and carries with it the highest punishment available in our justice system. Thus, I concur in overruling the first issue. As to the second issue, it is crucial to note that the motion to suppress was as to the entire "statement" of the juvenile. There were, however, clearly portions of the statement that were not merely part of the statement but were in fact the result of questions by the juvenile probation officer. There is no question that the juvenile was in custody; the State concedes this. And there really should be no question that the juvenile probation officer asked questions designed to illicit incriminating statements, such as why the juvenile committed the murder. But the statement in its entirety was not the result of questioning by the juvenile probation officer. The problem, from an analytical standpoint, is that because the statement was attacked in an all-or-nothing fashion at the hearing on the motion to suppress, the trial court did not err in determining that it was admissible because clearly some parts of it were admissible. I do not join any inference however, that merely because the juvenile initiated the interaction, that the juvenile's responses to specific questions and the statements made once the juvenile probation officer started asking questions, would have been admissible if properly segregated and separately challenged. With these comments I join only the judgment of the court as herein limited.)



Page 13