PD-1253-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 11/10/2015 4:24:47 PM
Accepted 11/12/2015 1:35:25 PM
ABEL ACOSTA
CLERK

PD 1253-15

## IN THE COURT OF CRIMINAL APPEALS

## OF TEXAS

---

### JIMMY EARL VAN-CLEAVE,
*Appellant*,

### v.

### THE STATE OF TEXAS,
*Appellee*.

---

On Petition for Discretionary Review from the
Fourteenth Court of Appeals in No, 14–14–00473–CR
affirming the conviction in cause number 9403197,
From the 179th District Court of Harris County, Texas

---

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

---

ORAL ARGUMENT NOT REQUESTED

FILED IN
COURT OF CRIMINAL APPEALS

November 12, 2015

ABEL ACOSTA, CLERK

**ALEXANDER BUNIN**
Chief Public Defender
Harris County, Texas

**JANI MASELLI WOOD**
Assistant Public Defender
Harris County, Texas
TBN. 00791195
1201 Franklin Street, 13th Floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax: (713) 368-9278
Counsel for Appellant
November 10, 2015

## IDENTITY OF PARTIES AND COUNSEL

| | |
|---|---|
| Appellant: | Jimmy Earl Van-Cleave<br>TDCJ# 682347<br>Robertson Unit<br>12071 FM 3522<br>Amarillo, TX 79601 |
| Trial Prosecutor:<br>Appellate Prosecutor | Ms. Cara Burton<br>Ms. Carly Dessauer<br>Assistant District Attorney<br>Harris County, Texas<br>1201 Franklin, 6th Floor<br>Houston, Texas 77002 |
| Defense Counsel at Trial: | Ms. Jani Maselli Wood<br>Assistant Public Defender<br>1201 Franklin St., 13th Floor<br>Houston, TX 77002<br><br>Harris Wood, Jr.<br>701 North Post Oak Rd #245<br>Houston, Texas 77025 |
| Presiding Judge: | Hon. Kristen Guiney, Presiding Judge<br>184th District Court<br>Harris County, Texas<br>1201 Franklin, 18th floor<br>Houston, Texas 77002 |
| Defense Counsel on Appeal: | Jani Maselli Wood<br>Assistant Public Defender<br>Harris County, Texas<br>1201 Franklin, 13th Floor<br>Houston, Texas 77002 |

# Table of Contents

Identity of Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Index of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Statement of Procedural History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Ground for Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Reason for Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      The offense. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
      Mitigation Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      The Van-Cleave Family. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
      Mr. Van-Cleave's father. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

When weighing evidence for harm in constitutional error, this Court has held that an appellate court should consider everything in the record. *Rich v. State*, 160 S.W.3d 575 (Tex. Crim. App. 2005). The Court of Appeals only considered evidence of the offense and failed to analyze or consider the defense evidence in determining the constitutional errors were harmless. Did the Court of Appeals err in failing to consider all evidence from the trial in its harm analysis?. . . . . . . . . . . . . . . . . . . . . . 13

The Court of Appeals never evaluated the mitigation evidence offered by Mr. Van-Cleave.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

The integrity of the process was thwarted by Confrontation Clause violations.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

The inadmissible evidence undermined the entire theory of the defense. .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Prayer for Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Appendix . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

INDEX OF AUTHORITIES

PAGE

**Cases**:

*Ex parte Van-Cleave*,
 AP-77,012, 2013 WL 2112369 (Tex. Crim. App. 2013). . . . . . . . . . . . . . . . 6, 7

*Harris v. State*,
 790 S.W.2d 568 (Tex. Crim. App.1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*McCarthy v. State*,
 65 S.W.3d 47 (Tex. Crim. App.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Rich v. State*,
 160 S.W.3d 575 (Tex. Crim. App. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . 7, 15

*Van-Cleave v. State*,
 14-14-00475-CR, 2015 WL 5025653
 (Tex. App.—Houston [14th Dist.] Aug. 25, 2015, no. pet. h.). . . . . . . passim

*Wesbrook v. State*,
 29 S.W.3d 103 (Tex. Crim. App. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . 7, 15

**Rules**:

TEX. R. APP. P. 44.2(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not requested.

## STATEMENT OF THE CASE

Mr. Van-Cleave was convicted of aggravated kidnaping on July 20, 1994. (C.R. at 100). The Court of Criminal Appeals granted habeas relief as to punishment only on May 15, 2013. *See Ex parte Van-Cleave*, AP-77,012, 2013 WL 2112369 (Tex. Crim. App. May 15, 2013)(not designated for publication). This appeal is from the new punishment hearing heard by the 179th district court in June 2014. (C.R. at 103). After two days of testimony, the trial court sentenced Mr. Van-Cleave to life imprisonment. (C.R. at 103).

## STATEMENT OF THE PROCEDURAL HISTORY

In an unpublished opinion, the Fourteenth Court of Appeals affirmed Mr. Van-Cleave's conviction. *Van-Cleave v. State*, 14-14-00475-CR, 2015 WL 5025653 (Tex. App.—Houston [14th Dist.] Aug. 25, 2015, no. pet. h.). A motion for rehearing was filed and denied. After an extension of time, this petition is timely if filed on or before November 11, 2015.

GROUND FOR REVIEW

When weighing evidence for harm in constitutional error, this Court has held that an appellate court should consider everything in the record. *Rich v. State*, 160 S.W.3d 575 (Tex. Crim. App. 2005). The Court of Appeals only considered evidence of the offense and failed to analyze or consider the defense evidence in determining the constitutional errors were harmless. Did the Court of Appeals err in failing to consider all evidence from the trial in its harm analysis?

REASON FOR REVIEW

The Fourteenth Court of Appeals has decided an important question of state or federal law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals in *Rich v. State*, 160 S.W.3d 575, 577-78 (Tex. Crim. App. 2005) and *Wesbrook v. State*, 29 S.W.3d 103 (Tex. Crim. App. 2000). TEX. R. APP. P. 66.3(c).

STATEMENT OF FACTS RELATIVE TO GROUND RAISED

Mr. Van-Cleave received a new punishment hearing because at his first trial, no mitigation evidence was offered. *Ex parte Van-Cleave*, AP-77,012, 2013 WL 2112369 (Tex. Crim. App. May 15, 2013). In the new punishment hearing, Mr. Van-Cleave presented numerous witnesses as well as the State offering its own witnesses.

*The offense*

The complainant, Marcella Hoffman, testified that in 1994 while driving home from her job at TWA Airlines at 1:00 a.m., while on the Peirce elevated, she noticed a white truck and the occupants were looking at her. (2 R.R. at 10-13). Her trip home to Spring was about 15-20 miles and as she was exiting Cypresswood, she was rear-

ended. (2 R.R. at 13-16). She was about five minutes from home and called her husband, a Houston police officer, on her cell phone after the accident. (2 R.R. at 16-19, 43). She exited her vehicle to get the license plate of the truck that had hit her and testified she was grabbed from behind. (2 R.R. at 20-22). She identified Mr. Van-Cleave as the man who grabbed her. (2 R.R. at 24). He let go for a second and she turned and attempted to stab him with a pen. (2 R.R. at 23). She was thrown to the ground and knocked out. (2 R.R. at 23). When she regained consciousness, she was in the truck and was being driven away. (2 R.R. at 24). The complainant tried to grab the steering wheel along with trying to open the door to get away. (2 R.R. at 25-26). She bit off Mr. Van-Cleave's finger and opened the door and rolled out of the moving vehicle. (2 R.R. at 26-28). She hit soft ground and sprained her leg as the truck ran over her. (2 C.R. at 28-29, 32).

While the complainant was in the truck, her husband came upon the scene in his patrol car. (2 R.R. at 29-30). The patrol car and the truck crashed. (2 R.R. at 30). The driver's license of Mr. Van-Cleave was in the vehicle and while at the scene, the complainant identified him as the person who had kidnaped her. (2 R.R. at 31-32).

The complainant's husband, Officer Hartman stated that upon receiving the call from his wife, he grabbed his gun and ran out to the patrol car wearing only his sweat pants and a t-shirt. (2 R.R. at 43). He came upon the scene and saw his wife's

car being driven by another man behind a white truck. (2 R.R. at 44-45). He put on his lights and decided to stop the truck. (2 R.R. at 44-45).

The truck failed to yield and was being driven erratically. (2 R.R. at 47). Officer Hartman saw a person "bail out of the truck" after the truck had hit the police car. (2 R.R. at 47). The truck tried to ram the patrol car again but the patrol car rammed the truck into some trees, instead. (2 R.R. at 47). Officer Hartman jumped out of his patrol car and was unable to find his gun. (2 R.R. at 50-51). He banged on the window of the truck and told the driver to show him his hands - but the driver ran away out of the truck. (2 R.R. at 50-52).

Houston police officer Bill Taber was present when Mr. Van-Cleave was brought to the police station. (2 R.R. at 57-59). Officer Taber was present when Mr. Van-Cleave gave a written statement to the police admitting to the offense. (2 R.R. at 69-73). The State also offered the testimony of Harris County Deputy Michael Squyres who photographed numerous gang-related tattoos Mr. Van-Cleave had. (2 R.R. at 75-85).

*Mitigation Evidence*

Deputy Squyres stated Mr. Van-Cleave had belonged to the Aryan Circle but had successfully completed the gang renunciation program offered at TDCJ. (2 R.R. at 77-80). The program offered at TDCJ was considered a good program at TDCJ

and something that "most definitely" should be encouraged to inmates, according to Deputy Squyres. (2 R.R. at 86).

Captain Antonio Gallardo, a former Marine and current prison guard from Abilene Texas came and testified for Mr. Van-Cleave. (3 R.R. at 4-5). Captain Gallardo stated he had never testified for an inmate before. (3 R.R. at 5). While in prison, Mr. Van-Cleave was a good worker and reliable and responsible. (3 R.R. at 5-6). Captain Gallardo witnessed an event where another inmate tried to engage Mr. Van-Cleave in a fight, and Mr. Van-Cleave turned and walked away. (3 R.R. at 6).

Frank AuBuchon, an expert on prison security classification systems testified Mr. Van-Cleave had initially had some problems in prison but had been trouble free for the last 7 years, with only one write up. (3 R.R. 9, 16). Mr. Van-Cleave had been housed in general population with other inmates who follow the rules and "doing their time." (3 R.R. at 15).

*The Van-Cleave Family*

Mr. Van-Cleave had numerous family members testify to the horrifying conditions he grew up with. Wanda Ray, his aunt explained how Jimmy's parents were abusive and had four children removed from the home. (2 R.R at 89-91, 103-06). Mr. Van-Cleave's mother would beat him with a coat hanger. (2 R.R. at 90).

Mr. Van-Cleave's sister, Vonie Sullivan, described the tragic childhood of Mr. Van-Cleave. (2 R.R. at 95-100). He was picked on. (2 R.R. at 96). He was beaten. A lot. (2 R.R. at 96). Growing up, they lived in over 50 different places within 15 years. (2 R.R. at 96). They lived in hotels, the Salvation Army, and with different family members. (2 R.R. at 96). During the times that her parents were separated, her mother would have different men living in the house. (2 R.R. at 98). Ms. Sullivan was repeatedly raped by her mother's male friends. (2 R.R. at 97-98). Mr. Van-Cleave often was in the bed with his sister while she was assaulted. (2 R.R. at 98). When Ms. Sullivan was 11, she became pregnant by her mother's boyfriend and had an abortion. (2 R.R. at 98). Although Mr. Van-Cleave was hospitalized for psychiatric issues as a child, his mother never followed through to ensure he got the necessary treatment. (2 R.R. at 100).

*Mr. Van-Cleave's father*

Mr. Van-Cleave's father was a serial predator and molested not only his son, but numerous other relatives. (2 R.R. at 105-10). Barbara Van-Cleave, a cousin, personally witnessed Mr. Van-Cleave being molested as a child by his own father. (2 R.R. at 106-08). Mr. Van-Cleave's sister was also molested by her father - starting when she was 6. (2 R.R. at 97). Ms. Ray was raped by her brother, Mr. Van-Cleave's father, when she was 8. (2 R.R. at 91). Kathy Baugh, Mr. Van-Cleave's niece barely

-11-

escaped being molested by her aging grandfather when she was 9. (2 R.R. at 92-93).

Although she was just 9, when her grandfather asked her to straddle his naked body,

she knew something wasn't right. (2 R.R. at 93).

Ms. Sullivan stated that having lived in that family, it made her angry and always

ready to fight. (2 R.R. at 99). Barbara Van-Cleave was also repeatedly abused, and had

similar anger issues. (2 R.R. at 107-08). Barbara described the impotence she felt as

a child continually being molested:

> I think because as a child when you're growing in, you don't have control, you don't have the say-so of what happens to you, these people that are abusing you and neglecting you are the ones that are in control and it sets up this cycle within you. You're told you can't tell, you're told you get in trouble if you tell, and it's in you. It's inside you and then, sometimes it comes out violently.

(2 R.R. at 108-09).

Numerous prison records were offered - three of which the Court of Appeals

found violated the Confrontation Clause:

> Specifically, the three disciplinary reports we conclude were testimonial in nature are the following descriptions: (1) fighting with another inmate enters into a narrative track when it states that "[appellant] was ordered by Lt. T. Brown to stop fighting and face the wall" and included that "said inmate failed to obey the order"; (2) appellant's exposure of himself adds that the act was committed "with intent to arouse the sexual desire of himself"; and (3) possession of weapons describes them as "two 6 inch toothbrush handles with razor blades melted into the end" which were "intended to be used to injure another." We conclude the reports contain testimonial statements regarding appellant's conduct.

*Van-Cleave v. State*, 14-14-00473-CR, 2015 WL 5092620, at *5 (Tex. App.—Houston

[14th Dist.] Aug. 27, 2015, no. pet. h.)


ARGUMENT

When weighing evidence for harm in constitutional error, this Court has held that an appellate court should consider everything in the record. *Rich v. State*, 160 S.W.3d 575 (Tex. Crim. App. 2005). The Court of Appeals only considered evidence of the offense and failed to analyze or consider the defense evidence in determining the constitutional errors were harmless. Did the Court of Appeals err in failing to consider all evidence from the trial in its harm analysis?

While the Court of Appeals held that the trial court committed constitutional

error - the only analysis for harm was solely focused on the facts of the offense, while

briefly noting that the State did not reference the prison infractions during closing:

The record supports that the trial court would have assessed a life sentence irrespective of the disciplinary infractions, based on the extremely violent facts of the present offense, committed while appellant was on parole for sexual assault. After seven months' parole for sexual assault and within hours of getting his first five-hour pass from the halfway house in which he was living, appellant drove to Galveston in a truck he had just received from his father. Appellant met various women and went to multiple bars while in Galveston. After leaving Galveston around midnight, appellant noticed complainant, who was driving alone in her car. Appellant decided to rob her, take her car, and, perhaps, "get some pussy, too." Appellant followed the complainant on the highway and caused an automobile accident between his truck and complainant's car. Complainant called her husband, a police officer, who instructed her to take note of the truck's license plate number. Appellant asked complainant if she was injured, and he appeared to have a nice demeanor until he saw that she was on the phone. Complainant exited her car to obtain appellant's license plate

-13-

number. Appellant put both hands around the complainant's neck and tried to strangle her. Complainant was unable to breathe for a short time and lost consciousness after being thrown to the ground.

Complainant regained consciousness on the floorboard of appellant's truck; appellant told her she was not "going anywhere, bitch." Complainant attempted to grab the steering wheel in an attempt to have appellant stop the vehicle enough that she could exit it as she opened the door. Appellant pushed her away, reaching over with his left hand to close the door. Complainant grabbed hold of his hand and bit off part of his "pinkie" finger, spitting it on the floorboard of the truck.

When complainant's husband arrived at the scene, he noticed his wife's car being driven by one male, and he found that suspicious. Complainant's husband was in a Houston Police Department patrol car. He turned on his lights and siren attempting to stop appellant's truck. Appellant rammed the police vehicle and would not stop. Complainant then rolled out of the truck. Appellant circled back and deliberately ran over her leg. Complainant's husband's patrol car collided with the truck, causing it to stop after appellant tried to ram the patrol car a third time. Complainant's husband exited his patrol car and ordered appellant to show his hands, at which time appellant abandoned his truck and ran for cover. He was apprehended the following day after attempting to avoid a police search.

In light of the evidence of appellant's criminal background, to which he pleaded "true," the facts of the present offense, and the trial court's comments, we conclude beyond a reasonable doubt that the trial court's admission of the disciplinary records did not contribute to appellant's punishment. *See* TEX.R.APP. P. 44.2(a); *Smith*, 297 S.W.3d at 277. We overrule appellant's first issue.

*Van-Cleave*, 2015 WL 5092620, at *5-6. The Court of Appeals ultimate conclusion was based upon the following: "In light of the evidence of appellant's criminal background, to which he pleaded "true," the facts of the present offense, and the trial court's comments" the evidence was harmless. *Id.* Those three factors do not include the entirety of the evidence.

**The Court of Appeals never evaluated the mitigation evidence offered by Mr. Van-Cleave**.

> This Court has considered the type of review necessary for constitutional error:

> In the case of the erroneous admission of evidence, we have said that the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error.

*Rich v. State*, 160 S.W.3d 575, 577-78 (Tex. Crim. App. 2005). As detailed in the statement of facts, *supra*, Mr. Van-Cleave presented compelling evidence of his reformation. The prison disciplinary infractions which happened subsequent to the offense were clearly in the court's mind. As the Court of Appeals explained, "[t]he records were admitted at the close of evidence, and the trial court then stated it would review the records during a brief recess." *Van-Cleave*, 2015 WL 5092620, at *5.

"An appellate court should not focus on the propriety of the outcome of the trial. Instead, the appellate court should calculate as much as possible the probable impact of the error on the jury in light of the existence of other evidence." *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000)(internal citations omitted). Despite this Court's instructions in *Wesbrook*, the Court of Appeals only looked at the appropriateness of the verdict of guilt:

The record supports that the trial court would have assessed a life sentence irrespective of the disciplinary infractions, based on the extremely violent facts of the present offense, committed while appellant was on parole for sexual assault.

*Van-Cleave*, 2015 WL 5092620, at \*5.

**The integrity of the process was thwarted by Confrontation Clause violations.**

When evaluating harm under TEX. R. APP. P. 44.2(a), the emphasis should not be on "the propriety of the outcome of the trial." *Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim. App.1989). This Court has directed reviewing courts to determine if the error affected "the integrity of the process leading to the conviction." *Id.* "The reviewing court should calculate, as nearly as possible, the probable impact of the error on the jury in light of the other evidence." *McCarthy v. State*, 65 S.W.3d 47, 55 (Tex. Crim. App.2002) (citations omitted).

**The inadmissible evidence undermined the entire theory of the defense.**

The Court of Appeals focused solely on the offense without considering all the evidence presented during trial. There is no indication the Court of Appeals weighed how this affected the entirety of the defense - that Mr. Van-Cleave was not the same person who committed the offense back in 1994.

This evidence *did* affect the court because it undermined the entirety of the defense that Mr. Van-Cleave was a changed man. All the mitigation presented was thwarted by evidence which was admitted entirely unchallenged by cross-examination.

-16-

By allowing evidence in violation of the Confrontation Clause which undermined the defense, the trial court erred and harmed Mr. Van-Cleave's defense.

Review should be granted.

PRAYER FOR RELIEF

For the reasons states above, Mr. Van-Cleave prays that this Court grant his petition for discretionary review.

Respectfully submitted,
**ALEXANDER BUNIN**
Chief Public Defender
Harris County Texas

*Jani Maselli Wood*

_____

JANI J. MASELLI WOOD
Assistant Public Defender
Harris County, Texas
Jani.Maselli@pdo.hctx.net
TBN. 00791195
1201 Franklin Street, 13th Floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax: (713) 368-9278

Attorney for Appellant
Jimmy Earl Van-Cleave

-17-

CERTIFICATE OF SERVICE

Pursuant to Tex. R. App. Proc. 9.5, this certifies that on November 10, 2015, a copy of the foregoing was emailed to Lisa McMinn, State Prosecuting Attorney, and the Harris County District Attorney's Office through texfile.com at the following address:

Carly Dessauer
Assistant District Attorney
1201 Franklin Street, 6th Floor
Houston, TX 77002
Dessauer_Carly@dao.hctx.net

Lisa McMinn
Lisa.McMinn@SPA.texas.gov

*Jani Maselli Wood*

_____

JANI J. MASELLI WOOD

CERTIFICATE OF COMPLIANCE

Pursuant to proposed Rule 9.4(i)(3), undersigned counsel certifies that this petition complies with the type-volume limitations of TEX. R. APP. PROC. 9.4(I)(2)(D).

1.      Exclusive of the portions exempted by TEX. R. APP. PROC. 9.4 (I)(1), this petition contains 2963 words printed in a proportionally spaced typeface.

2.      This petition is printed in a proportionally spaced, serif typeface using Garamond 14 point font in text and Garamond 14 point font in footnotes produced by Corel WordPerfect software.

3.      Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in *Tex. R. App. Proc. 9.4(j)*, may result in the Court's striking this brief and imposing sanctions against the person who signed it.

*Jani Maselli Wood*

_____

JANI J. MASELLI WOOD

**Appendix A**
Opinion *Van-Cleave v. State*

2015 WL 5092620
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION AND
SIGNING OF OPINIONS.

DO NOT PUBLISH — TEX.R.APP. P. 47.2(B).

Court of Appeals of Texas,
Houston (14th Dist.).

Jimmy Earl Van–Cleave, Appellant
v.
The State of Texas, Appellee
NO. 14–14–00473–CR | Memorandum Opinion filed
August 27, 2015

On Appeal from the 179th District Court, Harris County,
Texas, Trial Court Cause No. 9403197

Attorneys and Law Firms

Jani J. Maselli Wood, for Appellant.

Carly Dessauer, Devon Anderson, for Appellee.
Panel consists of Justices Boyce, McCally, and Donovan.

MEMORANDUM OPINION

John Donovan, Justice

*1 Appellant, Jimmy Earl Van–Cleave, appeals the trial court's sentence of life in prison on appellant's conviction for aggravated kidnapping. In two issues, appellant argues that the trial court erred in admitting appellant's prison disciplinary records containing evidence of extraneous offenses. We affirm.

I. Background

On July 20, 1994, appellant was convicted of aggravated kidnapping and sentenced to life in prison. Appellant was granted habeas corpus relief as to punishment only on the ground that he received ineffective assistance of counsel because there was no offer of mitigating evidence during the punishment phase. *See Ex Parte Van–Cleave,* No. AP–77012, 2013 WL 2112369, at *1 (Tex.Crim.App. May 15, 2013) (not designated for publication).

At the outset of his second punishment hearing, appellant pleaded "true" to an enhancement paragraph alleging a prior conviction for sexual assault. During the hearing, the State presented evidence describing the present offense and proving that appellant was on parole for the sexual-assault conviction when he committed the present offense. Appellant presented mitigating testimony revealing a difficult upbringing and testimony from two witnesses—prison guard, Antonio Gallardo, and correctional consultant, Frank AuBuchon. Gallardo testified regarding supervising appellant working in prison. AuBuchon testified about appellant's behavior during his incarceration; according to AuBuchon, appellant misbehaved and had disciplinary issues initially but later demonstrated good conduct in prison. At the close of evidence, the State offered appellant's prison disciplinary records containing descriptions of numerous infractions early in his incarceration. The trial court overruled appellant's objection and admitted the records.

In closing argument, the State did not dispute that appellant displayed an ability "to clean up his act" while incarcerated, but argued that he was not capable of behaving appropriately in the "free world." The State emphasized that appellant had been on parole for only seven months when he committed the present offense.

The record reflects that, before deciding appellant's sentence, the trial court took a brief recess stating it would review appellant's prison disciplinary records which had just been admitted. The trial court did not mention appellant's disciplinary records when orally pronouncing the life sentence. The trial court stated that, but for appellant's "absolutely horrific and tragic" childhood, he may have developed very differently, but the court could not ignore "the extreme violence" and his "criminal background."

II. Analysis

Appellant presents two numbered issues but argues that the trial court erred by admitting appellant's prison disciplinary records for three reasons: (1) the extraneous offenses contained therein were not proven beyond a reasonable doubt; (2) the descriptions of the offenses were testimonial in nature, such that their admission violated appellant's Sixth Amendment right to confrontation; and (3) the State failed to provide proper notice of its intent to use the records.

A. Reasonable–Doubt Argument

*2 In one portion of his first issue, appellant argues that the extraneous offenses contained in the disciplinary records never could be proven beyond a reasonable doubt because the preponderance-of-the-evidence standard applied when determining whether there was a disciplinary infraction.

We review a trial court's admission of evidence under the abuse-of-discretion standard. *Moses v. State,* 105 S.W.3d 622, 627 (Tex.Crim.App.2003). A trial court abuses its discretion when its decision "lies outside the zone of reasonable disagreement." *Murchison v. State,* 93 S.W.2d 239, 249 (Tex.App.—Houston [14th Dist.] 2002, pet. ref'd) (citing *Montgomery v. State,* 810 S.W.3d 372, 391 (Tex.Crim.App.1990)).

Texas Code of Criminal Procedure article 37.07 provides:

> [E]vidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible.

Tex.Code Crim. Proc. Ann. art. 37.07, § 3(a) (West, Westlaw through 2015 R.S.).

During the punishment phase, extraneous-offense evidence may be offered for any relevant purpose where the "State can offer proof that would allow a reasonable fact-finder to conclude, beyond a reasonable doubt, that the defendant could be held criminally responsible for that act." *Delgado v. State,* 235 S.W.3d 244, 252 (Tex.Crim.App.2007); *Fields v. State,* 1 S.W.3d 687, 688 (Tex.Crim.App.1999) (requiring the fact-finder may not consider extraneous-offense evidence unless it is satisfied beyond a reasonable doubt that the prior acts are "attributable to the defendant.")

The fact-finder in this case was the trial court. To admit the extraneous-offense evidence, the trial court must believe beyond a reasonable doubt that the appellant "could be held criminally responsible" for the offenses contained in the prison disciplinary records. *See Delgado,* 235 S.W.3d at 252. The fact that, for prison disciplinary purposes, the preponderance-of-the-evidence standard applies would not necessarily preclude the fact-finder in this case from deciding the reasonable-doubt standard was also satisfied. "A judge in a bench trial is presumed to have applied the correct law to the facts." *Coonradt v. State,* 846 S.W.2d 874, 876 (Tex.App.— Houston [14th Dist.] 1992, pet. ref'd); *see also Fields,* 1 S.W.3d at 688 (citing *McMillan v. Pennsylvania,* 477 U.S. 79, 91 (1986) ("[s]entencing courts have traditionally heard evidence and found facts without any prescribed burden of proof at all.")).

We hold that the trial court correctly applied the law and could have concluded beyond a reasonable doubt that appellant committed the offenses contained in the prison disciplinary reports because it had before it the contents of the records and AuBuchon's testimony corroborating some of the incidents in the reports confirming appellant was not a model prisoner early in his term. *See Coonradt,* 846 S.W.2d at 876. Additionally, error in the admission of the prison disciplinary reports would be harmless for the reasons set forth in Section B. *See Martinez v. State,* 313 S.W.3d 358, 369 (Tex.App.—San Antonio 2009, pet. ref d) (concluding that the omission of a reasonable-doubt instruction in a jury charge regarding unadjudicated offenses was not harmful error when the entirety of the evidence is reviewed).

B. Contention Regarding Confrontation Clause
*3 In another portion of his first issue, appellant contends that the disciplinary reports contain testimonial statements and thus their admission violated his Sixth Amendment right to confront witnesses. *See* U.S. Const. art. VI. The Confrontation Clause of the Sixth Amendment bars the admission of a non-testifying witness's testimonial statements, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *See Smith v. State,* 420 S.W.3d 207, 223 (Tex.App.—Houston [1st Dist.] 2013, pet. ref'd) (citing *Crawford v. Washington,* 541 U.S. 36, 59 (2004)). A statement is generally considered "testimonial" if it is a solemn declaration made for the purpose of establishing some fact. *Id.* (citing *Crawford,* 541 U.S. at 51). We review *de novo* a determination of whether a statement is testimonial because such a legal ruling is determined by the standard of an objectively reasonable declarant standing in the shoes of the

actual declarant. *See Lilly v. Virginia,* 527 U.S. 116, 137 (1999); *Wall v. State,* 184 S.W.3d 730, 742–43 (Tex.Crim.App.2006).

The disciplinary records contain the following descriptions of offenses:

On the date and time listed above, and at 12 Bldg. B Pod 63 Cell, [appellant] did assault [another inmate] without a weapon, by spitting on him. Moreover, the assault did not result in any injuries.

On the date and time listed above, and at Z-wing l-row, [appellant] did expose his penis to [Officer] with intent to arouse the sexual desire of himself.

On the date and time listed above, and at cell Z–122, [appellant] did intentionally damage the food slot door on his cell front door, by banging the door numerous times until it broke off the hinges said property belonging to [The State].

On the date and time above, and at H–119, [appellant] did possess contraband, namely 2 pair of shorts, which is in excess of the amount authorized, such amount being 1 pair of shorts.

On the date and time above, and at cell M–210, [appellant] did possess a weapon intended to be used to injure another person, namely two 6 inch toothbrush handles with razor blades melted into the end.

On the date and time above, and at bldg hallway, [appellant] did engage in a fight without a weapon with [another inmate]. [Appellant] was ordered by [Officer] to stop fighting and face the wall and [appellant] failed to obey the order.

On the date and time above, and at a-turnout door, [appellant] refused to turn out for his work assignment without a legitimate reason.

The Court of Criminal Appeals has held that a defendant's jail records, introduced at the punishment phase of trial, "chronicling the defendant's violation of jail rules, cell transfers, and fighting, is not inadmissible hearsay; rather, the jail records qualify as records made in the regular course of business." *Jackson v. State,* 822 S.W.2d 18, 30–31 (Tex.Crim.App.1990) (en banc); *see* Tex.R. Evid. 803(6). Evidence that falls within a firmly rooted exception to the hearsay rule does not violate the Confrontation Clause, and the business-records exception provides such a foundation. *See Russeau v. State,* 171 S.W.3d 871, 880 (Tex.Crim.App.2005). However, the disciplinary reports should not contain testimonial statements, unless the strictures of the Confrontation Clause have been satisfied. *Id.* at 881. Otherwise, such testimonial statements amount to the very type of evidence the Confrontation Clause intended to prohibit: "unsworn, ex parte affidavits of government employees." *Id.* The *Russeau* court ruled that the trial court erred in admitting the defendant's disciplinary records containing inadmissible testimonial statements because the Confrontation Clause's requirements had not been met. *Id.* at 880. In *Russeau,* the defendant's disciplinary offenses included "threatening physical harm and even death to others, refusing to work or cooperate, breaking out of his cell at night, exposing himself and masturbating in front of jailers and other inmates, verbally abusing jailers and other inmates, fighting with other inmates, and possessing contraband, including improvised weapons." *Id.* In concluding that the disciplinary report contained inadmissible testimonial hearsay, the *Russeau* court found particularly persuasive "the detailed and graphic" nature of the report that recounted appellant's numerous offenses. *Id.*

*4 In contrast, our court's review of a similar situation involving testimonial hearsay and prison disciplinary records found that a sterile recitation of the defendant's offenses and the punishments received contained no testimonial content and thus did not violate the Confrontation Clause. *See Ford v. State,* 179 S.W.3d 203, 209 (Tex.App.—Houston [14th Dist.] 2005, pet. ref'd). The accounts considered in *Ford* were the following:

> February 5th, 2004, the defendant was charged fighting. Seven days loss of privileges, found guilty, October 15, 2003, extortion. June the 11th, 2003, extortion, ten days loss of privileges. April the 21st, 2003, assault on an inmate. April 21st, 2003, horseplaying, altercation, five days' loss of privileges.

February the 24th, 1998, 25 days loss of privileges for fighting. February the 18th, 1998, fighting. February the 18th, 1998, fighting. And again February the 18th, 1998, fighting.

*Id.* at 208.

In a subsequent case, our court contrasted *Ford* with *Russeau* to further delineate between testimonial and non-testimonial statements. *See Grant v. State,* 218 S.W.3d 225, 231 (Tex.App.—Houston [14th Dist.] 2007, pet. ref'd). Relying on *Ford,* our court explained that the "presence or absence of a subjective narration of events related to [the defendant's] guilt or innocence" establishes the difference between testimonial and non-testimonial statements:

> [I]n *Ford,* we conceptualized the difference ... as dependent in part on the extent to which the statements are a sterile recitation of facts or a subjective narration of events related to appellant's guilt or innocence. In *Ford,* the statements in the disciplinary reports were objective statements that particular punishments were assessed for the identified disciplinary infractions by the appellant; they were not narratives by witnesses against the appellant relating to his guilt or innocence of the infractions described. Consequently, the statements were nontestimonial. In contrast, the statements in *Russeau* contained subjective narrations of the very actions by the appellant that constituted the offenses for which he is punished. Thus, the presence of a subjective narration of events related to the appellant's guilt or innocence is a significant difference between the statements at issue in *Russeau* and *Ford.*

*Id.*

The Court of Criminal Appeals has adopted this rationale for delineation of testimonial versus non-testimonial nature of records in similar circumstances. *See Smith v. State,* 297 S.W.3d 260, 277 (Tex.Crim.App.2009). The *Smith* court held that "boilerplate" language which does not contain any such testimonial statements, narratives of specific events, or written observations is admissible. *Id.* at 276; *see also Segundo v. State,* 270 S.W.3d 79, 108–07 (Tex.Crim.App.2009). Likewise, the First

Court of Appeals has held the following language went beyond "boilerplate" language and contained subjective observations from non-testifying witnesses:

> ...was disrupting in Ms. Richmond's class. He was sent out to security. Youth refused to go. Student was counseled by staff and refused to comply. Mr. Henderson tried counseling with ... [Youth]. He refused all counseling. Youth then moved away from staff trying to run. I grabbed ... [Youth] to place him in a standing PRT .... balled his fists up and swung at staff. Mr. Henderson took ... [Youth] and placed him into a part. At this time Mr. Spearman ... came to assist. I then went down and secured his legs.

*5 *Smith,* 420 S.W.3d at 225.

While some of the incident reports in the present case align closely with *Ford* 's sterile model, we conclude that three reports include testimonial descriptive phrases and brief narrative accounts resembling those found in *Smith. See id.* Specifically, the three disciplinary reports we conclude were testimonial in nature are the following descriptions: (1) fighting with another inmate enters into a narrative track when it states that "[appellant] was ordered by Lt. T. Brown to stop fighting and face the wall" and included that "said inmate failed to obey the order"; (2) appellant's exposure of himself adds that the act was committed "with intent to arouse the sexual desire of himself"; and (3) possession of weapons describes them as "two 6 inch toothbrush handles with razor blades melted into the end" which were "intended to be used to injure another." We conclude the reports contain testimonial statements regarding appellant's conduct. *See Smith,* 297 S.W.3d at 276–77.

The extraneous phrases in the written observations that make it more probable that the appellant was guilty of the offense charged are testimonial in nature. *See id.* We determine that the detail used to describe appellant's guilt of the extraneous offenses is testimonial hearsay and is inadmissible without appellant's prior opportunity to cross-examine the pertinent witness or a showing that the witness was unavailable. *See id.* Thus, we hold that the trial court erred in admitting three of appellant's disciplinary reports which included testimonial hearsay.

Having found constitutional error as to the three offenses described, we "must reverse [the] punishment unless [we] determine beyond a reasonable doubt that the error did not contribute to the ... punishment." Tex.R.App. P. 44.2(a); *see also Smith,* 297 S.W.3d at 277 (*citing Chapman v. California,* 386 U.S. 18, 24 (1967)). We hold that beyond a reasonable doubt the admission of appellant's disciplinary records did not contribute to his punishment.

The State did not reference appellant's prison disciplinary infractions during its closing argument. Rather, the State emphasized the callous nature of the present offense, noting that appellant reoffended after only seven months' parole and within hours of receiving a five-hour pass from the halfway house in which he was living.

Furthermore, the trial court made no reference to appellant's prison conduct in pronouncing his sentence. The records were admitted at the close of evidence, and the trial court then stated it would review the records during a brief recess. When announcing appellant's sentence, the trial court made no mention of the prison disciplinary reports. The trial court expressed only that "at the end of the day, though, the Court cannot ignore the extreme violence and your criminal background," and it took into account appellant's plea of true on the enhancement paragraph and found it to be true.

The record supports that the trial court would have assessed a life sentence irrespective of the disciplinary infractions, based on the extremely violent facts of the present offense, committed while appellant was on parole for sexual assault. After seven months' parole for sexual assault and within hours of getting his first five-hour pass from the halfway house in which he was living, appellant drove to Galveston in a truck he had just received from his father. Appellant met various women and went to multiple bars while in Galveston. After leaving Galveston around midnight, appellant noticed complainant, who was driving alone in her car. Appellant decided to rob her, take her car, and, perhaps, "get some pussy, too." Appellant followed the complainant on the highway and caused an automobile accident between his truck and complainant's car. Complainant called her husband, a police officer, who instructed her to take note of the truck's license plate number. Appellant asked

complainant if she was injured, and he appeared to have a nice demeanor until he saw that she was on the phone. Complainant exited her car to obtain appellant's license plate number. Appellant put both hands around the complainant's neck and tried to strangle her. Complainant was unable to breathe for a short time and lost consciousness after being thrown to the ground.

*6 Complainant regained consciousness on the floorboard of appellant's truck; appellant told her she was not "going anywhere, bitch." Complainant attempted to grab the steering wheel in an attempt to have appellant stop the vehicle enough that she could exit it as she opened the door. Appellant pushed her away, reaching over with his left hand to close the door. Complainant grabbed hold of his hand and bit off part of his "pinkie" finger, spitting it on the floorboard of the truck.

When complainant's husband arrived at the scene, he noticed his wife's car being driven by one male, and he found that suspicious. Complainant's husband was in a Houston Police Department patrol car. He turned on his lights and siren attempting to stop appellant's truck. Appellant rammed the police vehicle and would not stop. Complainant then rolled out of the truck. Appellant circled back and deliberately ran over her leg. Complainant's husband's patrol car collided with the truck, causing it to stop after appellant tried to ram the patrol car a third time. Complainant's husband exited his patrol car and ordered appellant to show his hands, at which time appellant abandoned his truck and ran for cover. He was apprehended the following day after attempting to avoid a police search.

In light of the evidence of appellant's criminal background, to which he pleaded "true," the facts of the present offense, and the trial court's comments, we conclude beyond a reasonable doubt that the trial court's admission of the disciplinary records did not contribute to appellant's punishment. *See* Tex.R.App. P. 44.2(a); *Smith,* 297 S.W.3d at 277. We overrule appellant's first issue.

C. Contention Regarding Defective Notice
In his second issue, appellant contends that the trial court erred in admitting the disciplinary records because the State failed to provide proper notice of its intent to use extraneous offense. Appellant asserts the State's notice reflected that every prison disciplinary offense occurred in Walker County, a county in which appellant argues he was never

-26-

incarcerated. Although appellant lists this assertion as an issue at the outset of his brief, he cites no authority or record references to support this assertion. An appellant's brief must contain "argument for the contentions made, with appropriate citations to authorities and to the record." Tex.R.App. P. 38.1(i). Failure to properly brief an issue presents nothing for us to review; we are not required to make appellant's arguments for him. *See Lucio v. State,* 351 S.W.3d 878, 896 (Tex.Crim.App.2011) (citing *Busby v. State,* 253 S.W.3d 661, 673 (Tex.Crim.App.2008)). Accordingly, we overrule appellant's second issue.

We affirm the trial court's judgment.

All Citations

Not Reported in S.W.3d, 2015 WL 5092620

---

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

-26-