**AFFIRMED and Opinion Filed July 15, 2022**



In The
## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-21-00275-CR

**TIMOTHY LEE BARNUM, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 15th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. 069939**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Nowell
Opinion by Justice Partida-Kipness

Appellant Timothy Lee Barnum appeals his murder conviction. In five issues, Barnum contends his conviction should be reversed and the case remanded for a new trial because the trial court erred by denying his request to appoint a competency evaluator and by admitting hearsay testimony of two witnesses. Finding no error, we affirm the trial court's judgment.

## BACKGROUND

On October 31, 2017, Stacy Allen became concerned when her husband, Robert Allen, had not returned home from work. When Robert did not answer his cell phone or work phone, Stacy decided to drive to the plumbing store where Robert

worked to see if he was there. When she arrived, she found Robert lying dead just inside the back door. His cause of death was determined to be a gunshot wound. Barnum had a child with Robert's daughter and had a turbulent relationship with Robert, and he soon came under suspicion for Robert's murder. After an investigation, Barnum was indicted for first degree murder.

Shortly before trial, Barnum's counsel asked the court to appoint an expert to evaluate Barnum's competency to stand trial. Barnum's sole support for this request was an affidavit that described an incident in which Barnum appeared disoriented and delusional. The trial court denied the request and commenced the trial.

The State's theory at trial was Barnum had conspired with his cousin, Tyrone Sommers, to murder Robert. The State alleged that Sommers agreed to commit the murder in exchange for a house and a car that Barnum owned. The State offered the testimony of multiple witnesses, including Barnum's father, Herman, and Andrew Smith, an inmate who had served time with both Barnum and Sommers. Four of Barnum's appellate issues challenge the admission of portions of Herman's and Smith's testimony.

Herman testified that after the murder took place, he drove by a house that Barnum once owned and found Sommers out front. During their conversation, Sommers made incriminating statements that connected him and Barnum to the crime, including the following:

- On the night of the murder, Barnum and his then-girlfriend Haley Lummus dropped Sommers off near the plumbing store;

- When Sommers arrived at the store, he entered through the back door and surprised Robert at his desk;

- Sommers "took care of that" for Barnum and "busted him," which Herman took to mean Sommers shot Robert for Barnum;

- After the murder, Barnum and Lummus picked Sommers up near a car wash, "roughed up" the gun, and threw it in a river;

- Barnum gave Sommers the house and a Cadillac in exchange for the murder; and

- Barnum asked Sommers to murder Robert in the past.

The jury learned that Herman received immunity from a felony charge in exchange for his testimony.

Smith testified that he and Barnum became "pretty close" during their time as cell mates in the Grayson County Jail. According to Smith, Barnum made multiple incriminating statements to him during that time:

- Barnum arranged for Sommers to kill "[h]is baby momma's father" for interfering in Barnum's relationship with his child;

- Sommers committed the murder in exchange for a house and two ounces of methamphetamine;

- Barnum dropped off Sommers before the murder and picked him up after; and

- Barnum would not have been in trouble if Sommers had not talked to the authorities.

Smith also knew Sommers. He testified that in April 2019, Sommers also made several incriminating admissions to him in jail:

–3–

- Sommers shot Robert in exchange for a house;

- Barnum wanted Robert dead because Robert was a racist and would not let Barnum see his child;

- Barnum dropped Sommers off near the plumbing business where he committed the murder;

- After the murder, Barnum and "a white girl" picked him up near a car wash, and they threw the murder weapon into a lake.

After hearing the evidence, the jury found Barnum guilty of murder, found a habitual offender enhancement to be true, and assessed punishment at life imprisonment. The trial court denied Barnum's motion for new trial, and this appeal followed.

## DISCUSSION

Barnum asserts five issues on appeal that can be placed in three categories.[1] First, Barnum contends the trial court erred by denying his request for a competency assessment. Second, Barnum argues that Sommers's statements to Herman and Smith should not have been admitted as statements against interest through Herman and Smith. Third, Barnum maintains admission of those statements violated

---

[1] The issues presented in this appeal are drawn from a brief filed by Barnum's appellate counsel. However, after that brief and the State's brief were filed, and after the case was submitted and orally argued, Barnum filed a motion for his counsel to withdraw so that he could proceed pro se on appeal. We deny the motion as untimely. "The right of self-representation is not a license to capriciously upset the appellate timetable or to thwart the orderly and fair administration of justice." *Ex parte Thomas*, 906 S.W.2d 22, 23–24 (Tex. Crim. App. 1995). Allowing Barnum to assert his right of self-representation after so long "and only after he had read his appellate counsel's briefs would unduly hamper the administration of justice." *Id.*; *see Beltran v. State*, No. 03-03-00599-CR, 2005 WL 171179, at *2 n.1 (Tex. App.—Austin Jan. 27, 2005, no pet.) (mem. op., not designated for publication) ("It is inconsistent with the orderly administration of justice to entertain a request for self-representation made after all briefs have been filed and the appeal has been submitted for decision.").

Barnum's constitutional rights of confrontation and cross-examination. We address each issue in turn.

## I.     Competency

In his first issue, Barnum contends the trial court erred by refusing to appoint an expert to evaluate his competency. We review a trial court's decision regarding an informal competency inquiry for an abuse of discretion. *Montoya v. State*, 291 S.W.3d 420, 426 (Tex. Crim. App. 2009), *superseded by statute on other grounds as recognized in Turner v. State*, 422 S.W.3d 676, 692 & n.31 (Tex. Crim. App. 2013). In conducting our review, we do not substitute our judgment for that of the trial court, but we determine whether the trial court's decision was arbitrary or unreasonable. *Id.* The prosecution of an incompetent defendant violates due process. *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018).

An accused is presumed competent to stand trial unless proved incompetent by a preponderance of the evidence. TEX. CODE CRIM. PROC. art. 46B.003(b). A defendant is incompetent to stand trial if he does not have (1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding or (2) a rational as well as factual understanding of the proceedings against the person. *Id.* art. 46B.003(a).

The trial court employs a two-step process to evaluate whether a defendant is incompetent to stand trial. *Boyett*, 545 S.W.3d at 563. The first step is an informal inquiry; the second step is a formal competency trial. *Id.* An informal inquiry is

required when any credible source suggests the defendant may be incompetent. TEX. CODE CRIM. PROC. art. 46B.004(a), (c), (c-1). At the informal inquiry stage, there must be "some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." *Boyett*, 545 S.W.3d at 563 (quoting TEX. CODE CRIM. PROC. art. 46B.004(c)). This standard requires more than a scintilla of evidence that rationally may lead to a conclusion of incompetency. *Id.* at 564. The trial court must consider only evidence of incompetency, and it must not weigh evidence of competency against the evidence of incompetency. *Id.* Further, some evidence must be presented at the informal inquiry stage to show that a defendant's mental illness is the source of his inability to participate in his own defense. *Id.* It is not enough to present evidence of either a defendant's mental illness alone or his inability to assist counsel; there must be some evidence indicating that the defendant's inability to rationally engage with counsel is caused by his mental illness. *Id.*

Factors to consider include whether a defendant can understand the charges against him and the potential consequences of the pending criminal proceedings; disclose to counsel pertinent facts, events, and states of mind; engage in a reasoned choice of legal strategies and options; understand the adversarial nature of the criminal proceedings; exhibit appropriate courtroom behavior; and testify. *Turner v. State*, 570 S.W.3d 250, 262 (Tex. Crim. App. 2018). Additional considerations may include whether the defendant has a mental illness or an intellectual disability,

whether the identified condition has lasted or is expected to last continuously for at least one year, whether medication is necessary to maintain the defendant's competency, the degree of impairment resulting from the mental illness or intellectual disability, and the specific impact on the defendant's capacity to engage with counsel in a reasonable and rational manner. *Laflash v. State*, 614 S.W.3d 427, 432 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (order) (quoting TEX. CODE CRIM. PROC. art. 46B.024(2)–(5)).

If, after an informal inquiry, the trial court determines that evidence exists to support a finding of incompetency, then the trial court must order a psychiatric or psychological competency examination to determine whether the defendant is incompetent to stand trial and, in most situations, must hold a formal competency trial. TEX. CODE CRIM. PROC. arts. 46B.005(a), (b), 46B.021(b)).

Barnum's sole evidence regarding incompetency was an affidavit drafted by a court-appointed investigator named Aaron Bucy. The affidavit described a meeting at which Bucy observed Barnum behaving strangely shortly before trial. Bucy explained that he and Barnum's counsel had gone to visit Barnum in jail. Barnum was brought to the visitation room, but instead of immediately entering, he stood outside for a moment and peered into the room. Then Barnum asked the guard to stay with him, but the guard declined. When the meeting began, Barnum repeatedly accused counsel of conspiring with the State in an effort to kill him, and he reported that he was hearing voices. Bucy testified that Barnum appeared not to recognize

him even though the two had met before. Based on this affidavit, Barnum asked the trial court to appoint an expert to evaluate his competency. The trial court denied the request. On appeal, Barnum argues that the affidavit was enough evidence to require the appointment of a competency expert. We disagree.

The affidavit says nothing about whether Barnum had a condition that prevented him from grasping the nature of the charges against him, their consequences, or the adversarial proceeding in which the charges would be tested for validity. There was no evidence that the incident described in the affidavit indicated a broader inability to communicate with counsel, to engage in reasoned choices, or to testify if he saw fit. The affidavit does not suggest that Barnum's disorientation and paranoia on the afternoon in question required medication or could be expected to last continuously for a year.[2]

The only thing the affidavit shows is one incident of odd behavior. We have consistently rejected claims that the trial court abused its discretion by denying a competency evaluation or trial when the suggestion of incompetency rests primarily on one aberrant episode shortly before trial, at least in the absence of any evidence connecting the episode with an inability to consult with counsel or understand the

---

[2] At oral argument, Barnum's counsel mentioned for the first time that Barnum had previously been diagnosed with schizophrenia. However, Barnum did not present evidence of this condition in the trial court. We, therefore, do not consider it in our analysis. *See* TEX. R. APP. P. 39.2 (stating that at oral argument, "[a] party should not refer to or comment on matters not involved in or pertaining to what is in the record"); *Ex parte Gray*, 126 S.W.3d 565, 569 n.4 (Tex. App.—Texarkana 2003, pet. ref'd, untimely filed) (attaching no weight to a factual representation at oral argument because "there is nothing in the record before us to support this contention").

proceedings. *Ware v. State*, No. 05-19-00365-CR, 2020 WL 4499797, at *1–2 (Tex. App.—Dallas Aug. 5, 2020, no pet.) (mem. op.) (rejecting incompetency claim based on evidence that (1) the defendant was bipolar and on the schizophrenia spectrum, and (2) when the defendant was asked to make a punishment election, he responded by telling the trial court about his prayers and his feeling that his life was in danger); *Minor v. State*, Nos. 05-19-00575-CR, 05-19-00576-CR, 2020 WL 2519736, at *4–5 (Tex. App.—Dallas May 18, 2020, no pet.) (mem. op., not designated for publication) (holding that there was no proof of incompetency where only evidence was the defendant's claim that he had seen and talked to his deceased mother just before trial); *Lomoglio v. State*, No. 05-18-01091-CR, 2019 WL 7288741, at *2 (Tex. App.—Dallas Dec. 30, 2019, no pet.) (mem. op., not designated for publication) (affirming denial of a competency evaluation where the central evidence of incompetency was that the defendant "experienced auditory hallucinations the previous night"); *see also Lindsey v. State*, 544 S.W.3d 14, 24 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd) ("Appellant's isolated instances of confusion did not show that appellant was incompetent to stand trial.").

The same analysis applies here. In the absence of any evidence connecting Barnum's one incident of unusual behavior with a mental condition that caused an inability to rationally engage with counsel or understand the proceedings, this behavior is no evidence of incompetence. *See Boyett*, 545 S.W.3d at 564.

Nor do the words that the trial court used to deny Barnum's request show reversible error. Barnum argues that when he requested the appointment of an expert, the trial court responded in a way that shows the court was wrongly considering evidence of competence when making its determination rather than focusing solely on the evidence of incompetence as it was required to do:

> THE COURT: Over the course of this case, it's gone on at least three years, I have allowed Mr. Barnum to address the Court more than I normally would. He certainly always seemed competent. There's absolutely zero evidence he's incompetent, and he got up and made statements and testified during the pre-trial last Tuesday, where he went through chronology, he knew dates. He certainly was one hundred percent competent, as far as I'm concerned, and that's why I'm not going to order the mental examination.

We agree these comments indicate the trial judge may have considered evidence of Barnum's competence when making his decision. However, we conclude this was not reversible error.

A claim of reversible error on direct appeal should be rejected if the trial court's ruling is correct on any theory of law applicable to the case, even if the trial court did not purport to rely on that theory and the prevailing party did not explicitly raise the theory. *State v. Castanedanieto*, 607 S.W.3d 315, 327 (Tex. Crim. App. 2020); *see Cuellar v. State*, Nos. 11-15-00078-CR, 11-15-00079-CR, 11-15-00080-CR, 2017 WL 2484352, at *3 (Tex. App.—Eastland June 8, 2017, pet. ref'd) (mem. op., not designated for publication) (applying this rule to a competency issue). Here, there was no evidence of incompetence. That lack of proof on its own justifies the denial of Barnum's request to appoint a competency evaluator. Because the trial

court's ruling is correct under an alternative theory, the trial court's remarks concerning the evidence of competence do not constitute reversible error. We overrule Barnum's first issue.

## II. Statements Against Interest

In his second and fourth issues, Barnum contends the trial court abused its discretion by admitting hearsay testimony under the exception for statements against interest. Barnum complains of testimony given by Herman and Smith regarding incriminating statements made by Barnum and Sommers, his coconspirator. According to Barnum, Sommers's statements were not truly against his interests. Rather, the statements served Sommers's interests because they shifted blame away from Sommers and onto Barnum.

Generally, the hearsay rule excludes any out-of-court statements offered to prove the truth of the matter asserted. TEX. R. EVID. 801(d), 802. An exception to the hearsay rule allows admission of statements made against the declarant's interest. TEX. R. EVID. 803(24). Rule 803 sets out a two-step foundation for the admissibility of statements against interest. *Walter v. State*, 267 S.W.3d 883, 890 (Tex. Crim. App. 2008). First, the trial court must determine whether the statement, considering all the circumstances, subjects the declarant to criminal liability and whether the declarant realized this when he made that statement. *Id.* at 890–91. Second, the court must determine whether there are sufficient corroborating circumstances that clearly

indicate the trustworthiness of the statement. *Id.* at 891. Self-inculpatory statements fall into three general categories:

> Some inculpate only the declarant (*e.g.*, "I killed Joe."); others inculpate equally both the declarant and a third party, such as a co-defendant (*e.g.*, "We killed Joe."); still others inculpate both the declarant and third party, but also shift blame by minimizing the speaker's culpability (*e.g.*, "We robbed the bank, and Dan killed Joe, the bank teller."). A confession, conversation or narrative, even a short one, might mix together all three types of statements.

*Id.* at 891–92. Statements that are purely against the declarant's interest and collateral "blame-sharing" statements may be admissible under Rule 803(24) if corroborating circumstances clearly indicate their trustworthiness. *Id.* at 896. "Blame-shifting" statements that minimize the speaker's culpability are not, absent extraordinary circumstances, admissible under the rule. *Id.* "[T]he trial judge is obligated to parse a generally self-inculpatory narrative and weed out those specific factual statements that are self-exculpatory or shift blame to another." *Id.* at 897.

For example, in *Walter*, the declarant claimed that he merely acted as a lookout while the defendant committed three murders during a robbery. *Id.* at 899. The Court of Criminal Appeals held that these were inadmissible blame-shifting statements because they had the effect of minimizing the declarant's role in the crime (a lookout) while portraying the defendant as the more blameworthy player (the one who pulled the trigger). *Id.*

But not all statements differentiating between who participated in and who carried out a crime are inadmissible. *See, e.g.*, *Mangiafico v. State*, No. 05-13-01490-

CR, 2015 WL 2394640, at *6 (Tex. App.—Dallas May 18, 2015, no pet.) (mem. op., not designated for publication). In *Mangiafico*, we held that even though the declarant described the defendant as the killer, the declarant was not shifting away blame because he simultaneously described himself as the plot's mastermind, who had developed alibis for the participants and adjusted the plan during its offing in order to avoid detection. *Id.*

We find *Mangiafico* applicable here. Sommers implicated himself as the one who pulled the trigger in exchange for compensation, but his statements show that Barnum was the mastermind who hatched the murder-for-hire plot, paid Sommers to perform it, and facilitated the scheme every step of the way. While Sommers's statements differentiated his own role in the crime from the defendant's role, no blame was shifted. Rather, much like in *Mangiafico*, the trial court could have fairly concluded that the statements put the declarant-triggerman and the defendant-mastermind on roughly equal footing in terms of perceived culpability. Thus, Sommers's blame-sharing statements satisfy the first stage of the foundation for a statement against interest. Barnum does not challenge the second stage of the foundation, which concerns corroborating circumstances. Accordingly, we overrule Barnum's second and fourth issues.

## III.   Confrontation Clause

In his third and fifth issues, Barnum argues that the trial court wrongly admitted testimony in violation of his constitutional right to confront the witnesses

–13–

against him. Barnum again targets the testimony of Herman and Smith, who relayed incriminating statements by Barnum and Sommers. The State counters that the statements in question were not testimonial and that Barnum's confrontation rights were not violated. We agree with the State.

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. CONST. amend. VI. In accordance with this right, "testimonial" out-of-court statements offered against the accused are inadmissible unless the prosecution can show that the out-of-court declarant is presently unavailable to testify and the accused had a prior opportunity to cross-examine him. *Langham v. State*, 305 S.W.3d 568, 575–76 (Tex. Crim. App. 2010). Although we defer to a trial court's determination of historical facts and credibility, we review de novo whether a statement is testimonial. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

"While the exact contours of what is testimonial continue to be defined by the courts, such statements are formal and similar to trial testimony." *Burch v. State*, 401 S.W.3d 634, 636 (Tex. Crim. App. 2013). Generally, a hearsay statement is testimonial when the surrounding circumstances objectively indicate that the statement is procured with the primary purpose of establishing or proving past events potentially relevant to later criminal prosecution. *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008). At a minimum, testimonial statements include (1) ex parte in-court testimony or its functional equivalent, such as affidavit testimony,

custodial examinations, prior testimony that the accused was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; (2) extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; and (3) statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. *Langham*, 305 S.W.3d at 576. "[T]he most important instances in which the Clause restricts the introduction of out-of-court statements are those in which state actors are involved in a formal, out-of-court interrogation of a witness to obtain evidence for trial." *Michigan v. Bryant*, 562 U.S. 344, 358 (2011). In assessing a statement's primary purpose, we consider "all of the relevant circumstances," *id.* at 369, often including the timing and setting of the challenged statement. *Lollis v. State*, 232 S.W.3d 803, 806 (Tex. App.—Texarkana 2007, pet. ref'd).

When a statement is not procured with a primary purpose of creating an out-of-court substitute for trial testimony, the admissibility of the statement is the concern of state and federal rules of evidence, not the Confrontation Clause. *Bryant*, 562 U.S. at 358–59. Thus, a person's informal statements to his friends are nontestimonial: "An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Crawford v. Washington*, 541 U.S. 36, 51 (2004).

Sommers's statements to Herman fall into the category of casual remarks to acquaintances. The challenged statements were made during a conversation between cousins, not between Sommers and a state agent. *See Ohio v. Clark*, 576 U.S. 237, 249 (2015) ("Statements made to someone who is not principally charged with uncovering and prosecuting criminal behavior are significantly less likely to be testimonial than statements given to law enforcement officers."). The conversation took place in front of the home that Sommers had newly acquired from Barnum, not in a stationhouse, a courtroom, or any other sort of "formal and structured setting that would lend itself to being considered testimonial." *See Crawford v. State*, 595 S.W.3d 792, 803 (Tex. App.—San Antonio 2019, pet. ref'd). The fact that Herman *later* received immunity in exchange for his testimony plays no part in how the objectively reasonable declarant would read the situation as it unfolded, and this circumstance does not retroactively instill their conversation with the primary purpose of making Sommers's incriminating statements available for use at trial. *See id.* (relying in part on the timing of statements that were made before a crime and its subsequent investigation to conclude that the statements were not testimonial); *Marmolejo v. State*, No. 08-11-00108-CR, 2013 WL 1846672, at *15 (Tex. App.— El Paso Apr. 30, 2013, no pet.) (not designated for publication) (concluding that an out-of-court declarant's statements were not testimonial even though the witness who heard the statements later received immunity in exchange for an agreement to

–16–

testify). In short, there was no objective indication that the statements were testimonial. *See De La Paz*, 273 S.W.3d at 680.

Barnum's and Sommers's statements to Smith, the jailhouse informant, appear to warrant similar treatment, at least based on the relationship between the three men. Barnum, for instance, was cell mates with Smith for roughly a year and, according to Smith, the two "became pretty close" over that time. Their relationship suggested familiarity, not the sort of formality that is the hallmark of a testimonial exchange. And there was no evidence that Smith was acting on behalf of the State when Barnum and Sommers disclosed the facts of the case to him.

Barnum argues that these statements should be treated differently because of the location in which they were made, i.e., a correctional facility. Barnum argues the fact that the statements were made in an institutional setting should, by itself, render the statements testimonial. We disagree.

In *Williams v. State*, the court rejected an identical argument. 606 S.W.3d 48, 58 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd). There, the defendant was charged with murder, and an inmate-informant testified that he heard the defendant's co-conspirator make incriminating statements while they were in jail together. *Id.* at 53–54. The defendant objected to this testimony on confrontation grounds, but the objection was overruled. *Id.* at 57. On appeal, the defendant argued that "all statements one inmate makes to another about a case are made with the knowledge that the statement could be available for potential use at a later criminal prosecution,"

and should thus be considered testimonial. *Id.* at 58. The appellate court disagreed and rejected the notion that the co-conspirator's statements should be viewed as testimonial simply because they were made in a correctional facility. *Id.* As support, the court cited multiple cases in which the content of phone conversations from jail were held to be nontestimonial, even though the conversations were had in correctional facilities and were recorded. *See id.* at 58 & n.3 (citing *Rodriguez v. State*, Nos. 07-15-00412-CR, 07-16-00124-CR, 2016 WL 7439189, at *3 (Tex. App.—Amarillo Dec. 21, 2016, no pet.) (mem. op., not designated for publication), and then citing *Townsend v. State*, No. 03-17-00495-CR, 2018 WL 3978489, at *3 (Tex. App.—Austin Aug. 21, 2018, no pet.) (mem. op., not designated for publication)).

Barnum urges us not to follow *Williams* and attempts to distinguish the jail-call cases upon which *Williams* relied. Barnum recognizes the jail-call cases involved recorded conversations, unlike the unrecorded remarks made to Smith here. Barnum maintains, however, that because these unrecorded remarks were less verifiable than recorded remarks would be, the unrecorded statements in this case were more in need of testing through cross-examination and were more apt to be deemed testimonial than a recorded call.

This distinction misses the mark. The definition of what is testimonial does not hinge on whether the statements in question were more or less worthy of credibility or cross-examination. *See Crawford*, 541 U.S. at 60 (abrogating *Ohio v.*

*Roberts*, 448 U.S. 56, 66 (1980) and its rule that generalized "indicia of reliability" could save a statement from exclusion under the Confrontation Clause). Rather, whether the statements are testimonial depends on if they were made under circumstances that objectively indicate a primary purpose to preserve the statements for later use in prosecution. *De La Paz*, 273 S.W.3d at 680. In the jail-call cases, the statements were recorded, which makes them more likely to be available for trial than the unrecorded conversations at issue here. Even so, those recorded jail calls were held not to be testimonial, which only makes the unrecorded statements in this case appear less testimonial by comparison. We find *Williams* persuasive and adopt its holding: the fact that the co-conspirator and the informant "were incarcerated at the time of their conversations did not make the statements testimonial." *See* 606 S.W.3d at 58.

This holding is reinforced by *Smith v. State*, 297 S.W.3d 260, 276 (Tex. Crim. App. 2009). *Smith* held that when a prison official issued a report on an inmate's disciplinary record, this report was not testimonial insofar as it simply set out "a sterile and routine recitation of an official finding or unambiguous factual matter such as . . . a bare-bones disciplinary finding." *Id.* Although the declarant was a prison official making formal statements in a prison, most of his statements were nonetheless held to be nontestimonial. *See id.* Thus, the fact that a declarant speaks from within prison walls does not by necessity bring his statements within the ambit of the Confrontation Clause. *See id.*

We conclude the statements in question were not testimonial and, therefore, admission of these statements did not offend the Constitution. We overrule Barnum's third and fifth issues.

## CONCLUSION

Barnum introduced no evidence of incompetency below. We, therefore, conclude the trial court properly denied Barnum's request for the appointment of a competency evaluator. As for Barnum's evidentiary complaints, we conclude the admission of the testimony of Herman and Smith did not violate the rules of evidence or the Confrontation Clause. Accordingly, we overrule Barnum's appellate issues and affirm the trial court's judgment.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

Pedersen, III, J., dissenting.

Do Not Publish
TEX. R. APP. P. 47.2(b)
210275F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

TIMOTHY LEE BARNUM,
Appellant

No. 05-21-00275-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 15th Judicial District Court, Grayson County, Texas
Trial Court Cause No. 069939.
Opinion delivered by Justice Partida-Kipness. Justices Pedersen, III and Nowell participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 15th day of July, 2022.